**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

RHENATTA KOHLHAUS,

                    Plaintiff,

            -v-                                                3:23-CV-1453 (AJB/ML)

EDUCATION PLUS CORP. *et al.*,

                    Defendants.
_____

**Hon. Anthony Brindisi, U.S. District Judge:**

<u>**DECISION and ORDER**</u>

## I.    INTRODUCTION

In the late '90s, plaintiff Rhenatta Kohlhaus ("plaintiff") attended the Family Foundation School ("FFS"), a private boarding school in Hancock, New York. The school held itself out as a place that offered "educational rehabilitation" for troubled teens.[1] But plaintiff alleges that this was a lie—what FFS actually did was subject its unwilling attendees to indoctrination and abuse.

On November 19, 2023, nearly a decade after the school's closure, plaintiff filed this action under the New York State Adult Survivors Act, which revived the limitations period for certain lapsed civil claims brought by survivors of sexual abuse. Plaintiff's negligence complaint alleges that FFS counselors Paul Geer ("Geer") and Audra Runge Towsley ("Towsley") sexually abused her on multiple occasions and that FFS CEO Emmanuel Argiros ("Argiros"), together with co-counselors Linda Anderson ("Anderson"), David Ginsberg ("Ginsberg"), and Michael and Roxanne Losicco (the "Losiccos"), aider her abusers and covered everything up. Dkt. No. 1.

---

[1] FFS is named as defendant-entity "Education Plus Corp. d/b/a The Family Foundation School."

The matter was assigned to Senior U.S. District Judge Thomas J. McAvoy. The school defendants, *i.e.,* FFS, Argiros, Anderson, Ginsberg, and the Losiccos, lawyered up, answered plaintiff's complaint, and asserted crossclaims against co-defendants Geer and Towsley. Dkt. No. 10. Geer, defending himself *pro se*, answered plaintiff's complaint, too. Dkt. No. 26. But Towsley, who is also a *pro se* defendant, defaulted on the pleading. Dkt. No. 30.

Thereafter, the parties (including Towsley, as explained *infra*) tried to conduct discovery while navigating around Geer and Towsley's *pro se* status and the federal criminal charges that were separately lodged against Geer for his alleged abuse of *other* former FFS students: V-1, V-2, and V-3. *United States v. Geer*, 3:24-CR-170-MAD (N.D.N.Y.).

This state of affairs has led to three motions: (1) Towsley has moved to vacate or set aside her default; (2) plaintiff has moved to dismiss a counterclaim asserted by Geer; and (3) plaintiff has appealed from a discovery order entered by the assigned magistrate judge. Dkt. Nos. 37, 89, 96. After the briefing deadlines for these three motions expired, the matter was reassigned to this Court for all further proceedings. Dkt. No. 109.

The motions will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND[2]

The complaint alleges that FFS falsely advertised itself as a residential treatment facility that offered education and rehabilitation to troubled teens. Compl. ¶ 3. According to plaintiff, what the school actually provided to the vulnerable children who were confined there against their will was a wide variety of mistreatment. *Id*. ¶ 4. Plaintiff alleges the school's employees

---

[2] The parties are here on diversity jurisdiction. Plaintiff is a Maryland resident. Compl. ¶ 10. Defendants live in New York, Tennessee, Florida, and/or Pennsylvania. *Id*. ¶¶ 11–18. At least fourteen other civil actions are pending against FFS defendants in state and federal courts (here and elsewhere). Dkt. No. 89 at 16 n.5 (collecting cases).

subjected students to a campaign of subjugation, coercion, and indoctrination that led to the sexual abuse she suffered from Geer and Towsley.  *Id*. ¶¶ 5, 60.

Geer worked at FFS as a counselor and choir director.  Compl. ¶ 13.  Plaintiff alleges that Geer routinely lured students, including plaintiff, to the upper floor of a barn that was used for chorus rehearsals, where he sexually assaulted them.  *Id*. ¶¶ 66, 68.  When plaintiff tried to report the abuse, Geer threatened her and misused his authority to punish her.  *Id*. ¶ 80.  Towsley also worked at FFS as a counselor.  *Id*. ¶ 14.  Plaintiff alleges that Towsley would punish students, including plaintiff, by rolling them up in carpets or blankets that were held shut with duct tape "from ankles to neck."  *Id*. ¶ 54.  Plaintiff further alleges that Towsley would sometimes strip-search her or even cavity-search her without a valid reason to do so.  *Id*. ¶ 60.

Plaintiff alleges that the other school defendants knew or should have known about Geer and Towsley's abuse.  Compl. ¶¶ 31, 86, 93.  For instance, plaintiff alleges that the other school defendants monitored attendance and knew that students were often absent from classes to attend Geer's "coaching" sessions in the barn.  *Id*. ¶¶ 84–86.  In other instances, plaintiff alleges that the school defendants were involved in the misconduct, such as directing certain counselors to "wrap up" students or to improperly search them.  *Id*. ¶¶ 54, 60.  According to the complaint, the school defendants were aware of Geer and Towsley's misconduct but chose to ignore it, cover it up, enable it, or deny it, which created the circumstances that allowed it to happen.  *Id*. ¶¶ 31, 93.

On April 3, 2024, with plaintiff's civil action pending, a federal grand jury returned a six-count indictment that charged Geer with misusing his position of authority at FFS to coerce V-1, V-2, and V-3 into taking trips with him across state and international lines while he harbored the intent to sexually abuse them.  *Geer*, 3:24-CR-170.  The Office of the Federal Public Defender ("OFPD") was appointed to defend Geer in this criminal action.  *Id*. at Dkt. No. 11.  Thereafter,

the Government obtained a superseding indictment that alleged the same charges. *Id*. at Dkt. No.

71. The matter eventually went to trial before U.S. District Judge Mae D'Agostino, where Geer

was convicted by a jury of the four counts that involved victims V-1 and V-3 on March 3, 2025.

*Id*. at Dkt. No. 150. Geer was remanded to the custody of the U.S. Marshals Service pending his

sentencing, which is currently set for September 4, 2025. *Id*. at Dkt. No. 168.

## III.    DISCUSSION

There are three motions pending: (1) Towsley's motion to vacate or set aside her default;

(2) plaintiff's motion to dismiss a counterclaim asserted by Geer; and (3) plaintiff's appeal from

the magistrate judge's discovery order.

### 1.  Towsley's Motion to Vacate

First, Towsley has moved to vacate or set aside her default, Dkt. No. 37, and has attached

a proposed answer to plaintiff's operative complaint, *id*. at 2–12.

"The court may set aside an entry of default for good cause." FED. R. CIV. P. 55(c). Rule

55 does not define "good cause," but the Second Circuit has established three primary criteria for

courts to consider. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These criteria

include: (1) the willfulness of the defaulting party; (2) the existence of meritorious defenses; and

(3) the prejudice to non-defaulting parties. *Bricklayers & Allied Craftworkers Local 2, Albany,*

*N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir. 2015).

Measured against this general legal standard, Towsley's motion to vacate or set aside her

default will be granted. This conclusion follows from a simple premise: "defaults are generally

disfavored and are reserved for rare occasions." *Enron Oil Corp.*, 10 F.3d at 96. Towsley, who

is defending herself *pro se*, made efforts to meet the original answer deadline, Dkt. No. 32, and

took prompt action to try to remedy her default on the complaint, Dkt. No. 37. Neither plaintiff

nor any of Towsley's co-defendants appear to have opposed vacatur.  Indeed, a review of the docket entries in this case show that Towsley has participated in discovery, conferences, and other hearings despite the fact that she is technically still in default.  *See, e.g.*, Dkt. No. 86.  Accordingly, Towsley's motion to vacate or set aside her default will be granted.

### 2. Plaintiff's Motion to Dismiss

Second, plaintiff has moved to dismiss a counterclaim asserted by Geer.  Dkt. No. 96.  As plaintiff explains, Geer has attempted to state a defamation counterclaim against her based on the allegations she has made against him in her complaint in this civil action.  *Id.*  In plaintiff's view, Geer's counterclaim is untimely and procedurally deficient, but in any event fails as a matter of law because statements made in the course of judicial proceedings are absolutely privileged.  *Id.*

"The same standard applies to a motion to dismiss a counterclaim that applies to a motion to dismiss a complaint."  *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 89 (S.D.N.Y. 2022) (collecting cases); FED. R. CIV. P. 12(b)(6) (permitting a motion to dismiss for "failure to state a claim upon which relief can be granted").  To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the non-movant, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

Measured against this general legal standard, Geer's counterclaim for defamation must be dismissed. First off, it is procedurally improper. Rather than attempt to amend his answer, Geer has filed a standalone document that purports to be a "counterclaim and jury demand." Dkt. No. 90. But a counterclaim must be stated in a "pleading." FED. R. CIV. P. 13. And the defendant's "pleading" is the answer to the complaint. FED. R. CIV. P. 7(a). Although there is an exception to this general rule for a counterclaim that matures after the pleadings are closed, a late-maturing counterclaim must be asserted in a "supplemental pleading," FED. R. CIV. P. 13(e), which would require leave of court to file, FED. R. CIV. P. 15(d).

Second, questions of basic civil procedure aside, Geer's "counterclaim and jury demand" is untimely. The pre-trial scheduling order entered by the magistrate judge set a deadline of May 31, 2024, for any amended pleadings. Dkt. No. 42. Geer has blown that deadline by almost six months. Dkt. No. 90 (filing counterclaim on November 13, 2024). While amendments are to be freely granted in the early stages of litigation, a more demanding "good cause" standard typically applies where, as here, the movant seeks relief that would modify a scheduling order. *See, e.g.*, *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (explaining "liberal" amendment period ends after scheduling order's amendment deadline and stricter "good cause" standard applies).

Geer has not offered any cause, let alone any "good cause," for why his out-of-time filing should be accepted as an amended answer or a supplemental pleading. The complete absence of an explanation is especially glaring where, as here, the proposed counterclaim is not of the late-maturing variety. Instead, Geer's counterclaim is based on factual allegations made in plaintiff's complaint in this civil action. Accordingly, Geer knew or should have known of its existence at the time he served his answer. FED. R. CIV. P. 13(a)(1).

Geer argues that these and other procedural requirements should not be rigidly applied to him because he is defending himself *pro se*.  *See* Dkt. No. 103.  That argument is half right.  It is true that a *pro se* litigant's filings must be held to less stringent standards than pleadings drafted by an attorney.  *See, e.g.*, *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012).  As the Second Circuit has explained, *pro se* filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest arguments that they suggest.  *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

But even a *pro se* litigant must comply with basic procedural rules.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Edwards v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995); *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  The basic procedural steps that Geer has flouted in his attempt to assert a counterclaim are not the kind that might be expected to trip up an unwary, unrepresented litigant: a defendant's obligation to promptly assert in his answer a counterclaim that would have been obvious from an initial review of the complaint's allegations is a basic procedural rule.

Even assuming otherwise, and *pro se* or not, Geer's "counterclaim and jury demand" must be dismissed because it is facially meritless.  *See Hogan*, 738 F.3d at 515 (holding a *pro se* pleading "must state a plausible claim for relief").  Geer's defamation counterclaim is based on the allegedly "false allegations" in plaintiff's "civil complaint"; *i.e.*, the allegations of fact that accuse Geer of engaging in abusive, neglectful, and degrading behavior and sexual abuse at FFS between September 1996 and March 1999.  *See* Dkt. No. 90.

This is not a viable basis for a defamation claim under New York law.  "Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name."  *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (quoting *Hogan v. Herald Co.*, 446 N.Y.S. 2d 836, 839 (4th Dep't 1982)).  "Generally, spoken defamatory words are slander;

written defamatory words are libel." *Albert*, 239 F.3d at 265.  To plausibly allege a defamation claim under New York law, the plaintiff must show (1) a defamatory statement of fact, (2) that is false, (3) was published to a third party, (4) "of and concerning" the plaintiff, (5) was made with the applicable level of fault, (6) caused special damages or constituted defamation *per se*, and (7) is not protected by privilege.  *See id*. at 265–66 (collecting cases).

Geer's defamation counterclaim must be dismissed because he is seeking relief for what are obviously "privileged" statements.[3]  Under New York law, "[s]tatements made in the course of judicial proceedings are absolutely privileged and therefore may not form the basis of a claim for defamation." *Lader v. Delgado*, 941 F. Supp. 2d 267, 271 (E.D.N.Y. 2013).  Although the complained-of statement(s) must be "material and pertinent" to some matter before the court to qualify for this protection, *Brown v. Maxwell*, 929 F.3d 41, 53 n.47 (2d Cir. 2019), the Second Circuit has cautioned that "this is the broadest of possible privileges and any matter which, by any possibility, under any circumstances, at any stage of the proceeding, may be or may become material or pertinent is protected by an absolute privilege even though such matter may be ineffectual as a defense," *Kelly v. Albarino*, 485 F.3d 665, 666 (2d Cir. 2007) (cleaned up).

In his opposition, Geer seeks leave to further amend his answer to include an abuse-of-process counterclaim.  Dkt. No. 103.  That request must also be denied.  Aside from the fact that it is just as untimely and just as procedurally improper as his defamation counterclaim, Geer has failed to identify what legal process might have plausibly been abused.  To the extent that Geer might seek to base this claim on plaintiff's pending civil action against him, that counterclaim would fail as a matter of law because, at least in New York, "the institution of a civil action by

---

[3] There is a narrow exception to this rule for statements made solely to defame the party-opponent. *See Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 672 (S.D.N.Y. 2016).  But Geer has not plausibly alleged facts that might permit his defamation counterclaim to survive on this extremely narrow ground.

summons and complaint is not legally considered process capable of being abused." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 106 (S.D.N.Y. 2020) (collecting cases). Instead, "[t]he defense to purportedly frivolous litigation is generally to prevail in that litigation, not to seek a state-law tort remedy." *Id*. at 107. Accordingly, Geer's counterclaim for defamation must be dismissed and his request to amend his answer to add an abuse-of-process counterclaim must be denied.

### 3. Plaintiff's Magistrate Judge Appeal

Third, plaintiff has appealed from the magistrate judge's discovery order that: (1) denied without prejudice her motion for a protective order; and (2) granted Geer's request for the OFPD to appear with him at depositions "to be conducted in this civil matter, but may not participate in the actual deposition[ ] proceedings." Dkt. No. 81.

The issuance of protective orders and rulings about who may be present at a deposition are non-dispositive matters. *Dorsett v. County of Nassau*, 800 F. Supp. 2d 453, 456 (E.D.N.Y. 2011). A magistrate judge's decision on a non-dispositive matter may be modified or set aside when it is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* FED. R. CIV. P. 72(a). A decision is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A decision is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Galloway v. County of Nassau*, 589 F. Supp. 3d 271, 277 (E.D.N.Y. 2022).

Measured against this general legal standard, the discovery order must be vacated. First, to the extent that plaintiff has challenged the denial of her motion for a civil protective order that

would restrict the use of her sensitive health information, it is not clear from the existing record whether the magistrate judge adequately addressed plaintiff's privacy-related arguments.

Generally speaking, civil parties may obtain discovery on any relevant, non-privileged matter that is reasonably calculated to lead to admissible evidence on a claim or defense and is proportional to the needs of the case. FED. R. CIV. P. 26(b)(1); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (explaining this provision "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"). However, "[b]ecause of the liberality of the pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders[.]" *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)."

Rule 26(c) governs the issuance of protective orders. The Rule provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co.*, 467 U.S. at 36. For instance, "[c]ourts routinely issue protective orders to govern discovery when sensitive non-public information is at issue." *Stone v. Annucci*, 2025 WL 579679, at *2 (S.D.N.Y. Feb. 21, 2025) (collecting cases).

This includes a person's sensitive health information, which is subject to, *inter alia*, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). "HIPAA is a complex piece of legislation that addresses the exchange of health-related information." *Nat'l Abortion Fed. v. Ashcroft*, 2004 WL 555701, at *2 (S.D.N.Y. Mar. 19, 2004). HIPAA delegated to the Secretary of Health and Human Services the authority to promulgate regulations about the use

and disclosure of "protected health information." *Id.* The Secretary's regulations apply to civil and criminal proceedings. 45 C.F.R. § 164.512(e).

Although there are exceptions (there always are), the general rule under HIPAA is that the discovering party must make reasonable efforts to obtain "a qualified protective order." 45 C.F.R. §§ 164.512(e)(ii)(B), (e)(iv)(A)–(B). As relevant here, a "qualified protective order" is one that prohibits the parties from using or disclosing the protected health information "for any purpose other than the litigation or proceeding for which such information was requested" and requires the return or destruction of the health information, including any copies, "at the end of the litigation or proceeding." § 164.512(e)(v).

Here, everyone except attorneys for the OFPD—none of whom is counsel of record in this civil action—seemed to agree that plaintiff's proposed HIPAA protective order was a "fairly standard" one. *Compare* Dkt. No. 86 at 17 (magistrate judge acknowledging plaintiff's request was "fairly standard"), *with* Dkt. No. 65-9 (e-mail from OFPD attorney stating that they have "reviewed" the proposed protective order and that Geer "won't agree to it as-is").

Given the routine nature of civil protective orders generally, and the routine nature of protective orders limiting the disclosure of sensitive health information specifically, it is hard to understand how the OFPD's objection carried the day. A review of the transcript suggests that the magistrate judge might have believed that the protective order would *improperly* "wall[ ] off" Geer's criminal attorneys by making it cumbersome for them to obtain discovery that they might want to use in the criminal action. Dkt. No. 86 at 24 ("[T]he difficulty that I'm having with the protective order is it walls off the criminal defense attorneys for Mr. Geer unless they obtain either a court authorization or a subpoena from the court, and I don't believe I can do that.").

There is nothing improper about that result.  True, a protective order in this action would prevent Geer from handing off protected documents to the OFPD's attorneys for their unfettered use.  But nothing in the civil protective order would preclude Geer from speaking to his criminal attorneys and alerting them to the existence of relevant civil discovery.  The OFPD's attorneys would be free to make an appropriate request for that material using an appropriate process: the criminal pre-trial discovery mechanisms available to them in the criminal action.[4]

If anything, a civil protective order that limited the dissemination of civil discovery in this civil action (and that forced Geer's criminal counsel to use the tools of criminal discovery available to them in the criminal action) should be understood as a feature, not a bug.  *Haidon v. Town of Bloomfield*, 552 F. Supp. 3d 265, 273 (D. Conn. 2021) (explaining Rule 26(c) is a tool for "ensuring the privacy of discovery materials that should, indeed, be kept private").  In fact, courts are quick to enter protective orders where, as here, one party might be working to exploit the tools of civil discovery for their own ends.  *See, e.g.*, *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 76 & n.8 (S.D.N.Y. 2010) (collecting cases).

Second, to the extent that the magistrate judge's order permits the OFPD to attend all of the outstanding depositions left in this action, that order must also be vacated.  Although Rule 26 affords courts broad discretion to designate "the persons who may be present while the discovery is conducted," FED. R. CIV. P. 26(c)(1)(E), the magistrate judge's discovery order is too broad of a holding made on too thin of a record to be affirmed.

That is especially so where, as here, it is not clear from the existing record whether the magistrate judge had an adequate opportunity to consider the sensitive circumstances of this

---

[4]  Adherence to proper criminal procedure would address another apparent concern; *i.e.*, that the civil protective order would somehow "interfere" with Geer's criminal case because HIPAA requires protected materials to be returned or destroyed at the end of the civil case.  Discovery properly produced in the criminal action could be preserved in that action using the appropriate criminal procedures.  Dkt. No. 65-10 at 5.

case, which involves plaintiff's allegations of sexual abuse that she suffered as a teenager.  A review of the transcript suggests that the magistrate judge might have mistakenly assumed that plaintiff's pursuit of civil remedies against her alleged abusers and enablers while one of them (Geer) was under indictment meant that her interests here must be diminished out of concern for his interests in the pending criminal prosecution.  Dkt. No. 86 at 35 ("These people didn't come into court voluntarily . . . . If you go and sue someone, then there's rules on what you're going to have to do in discovery.  If you don't want those and you don't like those, then don't sue the person.  It's as simple as that."); *id*. at 46 ("Mr. Geer did not raise his hand and say, please sue me, I'd like to be in this litigation.").

That is not plaintiff's problem.  True, civil defendants typically do not seek to be sued.  But civil plaintiffs do not invite the harms they allege, either.  Plaintiff is entitled to pursue her revived civil claims using all of the mechanisms of civil discovery that would be at the disposal of any other civil plaintiff at any other time in any other civil action, including run-of-the-mill tools such as HIPAA-compliant protective orders and reasonable requests to limit the presence of non-parties or non-participants (or both, such as the OFPD) at civil depositions.

In fact, to the best of the Court's knowledge the only reason a criminal attorney might be present at any civil deposition would be for an extraordinarily limited purpose—to observe their client's testimony and to advise the client when, if ever, to invoke their limited privilege against compelled self-incrimination.  The Court cannot think of another basis on which a non-appearing criminal attorney might ethically seek to "advise" a civil party in a pending civil action.

The other forms of "advice" floated by the OFPD as possible bases on which to justify their attendance at other depositions in this civil case—such as to "vet" the questions that Geer might want to ask of other witnesses—fall within the definition of "participation."  Dkt. No. 86

at 59 (OFPD attorney suggesting they might need to "advise" Geer not to "relay[ ] information" while questioning witnesses during civil depositions because "Geer could say something in the form of a question that we might not advise him to do"); *id*. at 61 (magistrate judge suggesting OFPD should be "able to vet what he is going to say" when he "ask[s] questions as a party").

The OFPD cannot participate in depositions in this action under the pretense of giving these forms of "advice." Assuming that they remain as counsel of record to Geer in the criminal action, the OPFD may *attend* Geer's civil deposition, but only in a limited, protective capacity; *i.e.*, to advise Geer about his self-incrimination risks. The OFPD's attorneys cannot become his civil counsel. Their role is strictly advisory regarding the criminal implications of any testimony he may decide to give in the civil case. Except as outlined above, the OFPD should not direct or control Geer's actions as a party in the civil proceeding. Nor should the OFPD vet the questions that Geer may ask witnesses at other depositions in his capacity as a *pro se* defendant. Acting as a real-time filter in these settings would be procedurally burdensome and ethically questionable.

Finally, with respect to both of these discovery issues, the record that has been developed below reflects a troubling pattern: several OFPD attorneys, none of whom is counsel of record, speaking on Geer's behalf about disputed matters in this civil action under the guise of looking out for his penal interests in the federal criminal prosecution. *See, e.g.*, Dkt. No. 65-9 (e-mail from OFPD explaining to counsel in this action that they had "reviewed the proposed protective order" and that "Paul [Geer] won't agree to [the protective order] as is"); Dkt. No. 86 (AFPD and FPD entering appearances on the record in this action and being heard despite not being counsel of record); *id*. at 69 (magistrate judge suggesting Geer's "attorneys" could "file [ ] a motion [for counsel]" to stay the civil action); Dkt. No. 89 at 6 n.3 (plaintiff noting that OFPD has been "summoned . . . to attend all conferences in this matter over Plaintiff's repeated objections and

permitted them to speak in court on Geer's behalf, making arguments and counseling him on how to proceed despite their unfamiliarity with civil litigation and despite the fact that they have not filed a notice of appearance in this civil action").

To be sure, this case presents an unusual situation—a *pro se* civil defendant who faces substantial criminal sentencing exposure in a loosely related federal criminal prosecution.[5]  And the record below leaves zero doubt that the magistrate judge takes seriously his duty to safeguard Geer's right to a fair criminal trial.  *United States v. Corbin*, 620 F. Supp. 2d 400, 403 (E.D.N.Y. 2009) ("[I]t is the trial judge's primary responsibility to govern judicial proceedings so as to ensure that the accused receives a fair, orderly trial comporting with fundamental due process.").

Indeed, the Supreme Court has characterized an accused's right to a fair trial as "the most fundamental of all freedoms."  *Estes v. State of Texas*, 381 U.S. 531, 540 (1965).  So it is not too hard to imagine why one might conclude that Geer's fair-trial rights should come first, or at least be considered first among equals.  After all, due process in the criminal context is focused on the rights of the accused, not of the accuser.  *Cf. Jordan v. Dep't of Just.*, 173 F. Supp. 3d 44, 49 (S.D.N.Y. 2016) (explaining that Congress enacted Crime Victims' Rights Act to "correct a criminal justice system" in which "crime victims have few meaningful rights").

But this is not Geer's criminal case.  This is a civil action in which plaintiff has sensitive and important interests at stake, too—she has sued Geer and his co-defendants for sexual abuses allegedly perpetrated against her as a teen.  *See, e.g.*, *Snyder v. Massachusetts*, 291 U.S. 97, 122

---

[5]  One might be tempted to think of the civil and criminal cases against Geer as being "related" or "parallel" to each other.  But plaintiff contends that it would be inaccurate to use either descriptor under these circumstances.  Dkt. No. 89 at 27–28.  According to plaintiff, this civil action is neither "related" nor "parallel" to the criminal one: plaintiff was not enrolled at FFS when the alleged criminal acts took place; she is not an alleged victim in the criminal case; and the alleged conduct involving V-1, V-2, and V-3 does not "share any details in common" with the conduct alleged in this civil action.  *Id*. at 28 ("Geer has presented no evidence that the allegations are connected temporally, geographically, or by any other detail beyond their general classifications as sexual assaults.").

(1934) ("[J]ustice, though due to the accused, is due to the accuser also."); *Carroll v. Trump*, 650 F. Supp. 3d 213, 220 (S.D.N.Y. 2023) (explaining State legislature enacted the Adult Survivors Act to give survivors an opportunity to take legal action against their alleged sexual abusers).

Geer has no right to counsel in this civil action. *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013) (identifying the narrow circumstances where civil proceeding might trigger need for counsel). And plaintiff has no duty to defer to Geer's penal interests in the criminal one. *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012) (identifying the considerations a civil defendant might weigh when contemplating whether to assert Fifth Amendment privilege).

Viewed against this backdrop, it is hard to figure out why plaintiff was not entitled to a judicially approved protective order or why the OFPD was given *carte blanche* to attend civil depositions. Plaintiff's pursuit of this civil action does not obligate her to bear the "annoyance, embarrassment, oppression, or undue burden" that arises when every shred of discovery she puts into Geer's hands winds up in the possession of his criminal attorneys, to be used as they see fit.

Nor should plaintiff be placed in a position where she might experience undue emotional distress during her civil deposition—particularly in a sexual abuse case—due to the conduct of non-party attorneys who are not counsel of record. Dkt. No. 89 at 30 (suggesting that OFPD's attorneys "have demonstrated an aggressive contempt for the civility, sensitivity, and discretion expected of attorneys in civil sexual assault cases").

The broad rules governing civil discovery were not written for the benefit of criminal attorneys. *See, e.g.*, *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) (observing that stay of civil matter pending conclusion of criminal proceedings might be warranted "to prevent either party from taking advantage of broader civil discovery rights");

- 16 -

*Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992) ("Allowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules.").

In sum, there appear to be legitimate questions regarding the scope and manner of the OFPD's participation in this civil action. Geer has enjoyed the special solicitude that we afford to unrepresented civil litigants despite having received something that looks dangerously similar to the assistance of civil counsel. That assistance has come from non-appearing attorneys, which gives rise to the concern that their ethical obligations might be mistakenly understood to run only to the criminal matter. Left unchecked, this state of affairs poses real risks: of gamesmanship (at best) or misconduct (at worst). And the broad field of possibility between these two evils might well prove to be fertile ground for many lesser ones.[6]

Importantly, though, there were (and still are) other options available to safeguard Geer's criminal due process rights without sacrificing plaintiff's own legitimate interests. For instance, it might be appropriate to stay the civil case as to Geer until the resolution of the criminal matter, either on motion or *sua sponte*. *Louis Vuitton Malletier S.A.*, 676 F.3d at 97 (holding power to stay is inherent); *Gilead Sciences Inc. v. Khaim*, 753 F. Supp. 3d 262, 268–69 (E.D.N.Y. 2024) (articulating factors); *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 8–10 (D. Conn. 2002) (articulating factors in so-called "parallel" proceedings).

Alternatively, it might be appropriate to appoint civil counsel for Geer, on motion or *sua sponte,* either for the remainder of this action or for a more limited purpose, such as finishing out

---

[6] For instance, this situation may have already led to an improper disclosure of sensitive information. Plaintiff's underlying request for a protective order was instigated by the fact that, at plaintiff's deposition, Towsley (the other *pro se* defendant) "began reading from unidentified medical records" that later turned out to be plaintiff's student "treatment" file. Dkt. No. 89 at 9. Plaintiff has never had access to these records. *Id.* And these records were not turned over to her in civil discovery despite an appropriate request. *Id.* at 9 n.4. Plaintiff later learned that Towsley obtained these records from the OFPD. *Id.* at 9–10.

discovery or even just the taking of depositions.  *See, e.g., Dean v. Robinson*, 738 F. Supp. 3d 356, 360 (W.D.N.Y. 2024) (observing civil defendant has no Sixth Amendment right to counsel but noting magistrate judge appointed counsel to assist him in completing discovery, "including depositions"); *UMG Recordings, Inc. v. McClean*, 2005 WL 1863674, at *1 (S.D.N.Y. Aug. 4, 2005) (appointing counsel to *pro se* defendant in civil action because "the case will turn largely on issues of credibility, making it important for [the party] to be represented").

In any event, recent developments in Geer's criminal case have almost certainly changed the state of matters on the ground.  Geer has been convicted of several felonies and remanded to the custody of the U.S. Marshals Service pending sentencing.  *Geer*, 24-CR-170 at Dkt. No. 148. But the OFPD's involvement in the criminal prosecution is not over, *id*. at Dkt. No. 155 (seeking extension of time to file post-trial motions), and it is likely to continue through sentencing and a direct appeal.  So it is unclear what the interests of justice might require at this point in the civil case.  *See, e.g., Nosik v. Singe*, 40 F.3d 592, 596 (2d Cir. 1994) (observing that protective orders might be enough).  Accordingly, the magistrate judge's discovery order will be vacated.

## IV.   CONCLUSION

Towsley's motion to set aside her default must be granted.  Plaintiff's motion to dismiss Geer's counterclaim must be granted, too.  But the assigned magistrate judge's discovery order will be vacated.  Based on the observations set forth above about how discovery has unfolded in this action, the Court is *sua sponte* considering whether it might be appropriate to enter a stay as to Geer or to appoint him counsel for a limited purpose, such as taking depositions.  To that end, the Court intends to schedule a conference with the parties to discuss these and related matters.

But the Court cannot make these decisions in a vacuum.  Thus, the parties are directed to submit briefing on whether: (1) a global stay, or a limited stay, of this civil action is appropriate

as to Geer; (2) the appointment of counsel for Geer is appropriate and, if so, for what purpose or purposes; (3) some other remedy or remedies, such as protective orders, might be sufficient to address the existing concerns.[7]  The parties' submissions may, but need not, address any other related matters bearing on the concerns identified in this opinion.

The OFPD is not a party to this civil action.  Nor has any attorney from OFPD appeared as counsel of record to any of the parties in this action.  However, in light of the foregoing, the FPD shall file a written submission that explains in detail: (1) the nature and extent of OFPD's involvement in this civil action; and (2) what role, if any, she believes is appropriate for OFPD attorneys with respect to Geer in this civil action.  The FPD's submission should identify legal authority or precedent, if any, that supports her position on these points of inquiry.

Therefore, it is

ORDERED that

1.  Towsley's motion to vacate her default (Dkt. No. 37) is GRANTED;

2.  Towsley's answer (Dkt. No. 37 at 2–12) is ACCEPTED;

3.  Plaintiff's motion to dismiss Geer's counterclaim (Dkt. No. 96) is GRANTED;

4.  Geer's application to amend his answer (Dkt. No. 103) is DENIED;

5.  Plaintiff's appeal of the discovery order (Dkt. No. 89) is SUSTAINED;

6.  The Magistrate Judge's discovery order (Dkt. No. 81) is VACATED;

7.  The parties' written submissions are due on or before June 6, 2025;

8.  The FPD's written submission is due on or before June 6, 2025;

---

[7]  Any discussion of whether appointment of counsel is warranted as to Geer should also address whether counsel for co-defendant Towsley, who is also *pro se*, is or is not appropriate.  Elsewhere, plaintiff has suggested that FFS could be compelled to provide one or both *pro se* defendants with counsel in this civil action.  Dkt. No. 65-10 at 5. Plaintiff's briefing should include a discussion of the mechanics and authority that support this possible alternative.

9.  An in-person status conference is scheduled for June 17, 2025 at 1:00 p.m. in Utica, New York;

10.  The parties, or their counsel, are directed to appear at the conference;

11.  The Federal Public Defender is directed to appear at the conference; and

12.  The Clerk of the Court is directed to serve a certified copy of this opinion on a representative of the Office of the Federal Public Defender.

The Clerk of the Court is directed to terminate the pending motions and set deadlines accordingly.

**IT IS SO ORDERED.**

Dated:  May 14, 2025
          Utica, New York.

Anthony J. Brindisi
U.S. District Judge